2007 UT App 353

**STATE of Utah, Plaintiff and Appellee,**

v.

**Andrew BRINK, Defendant and Appellant.**

No. 20060954–CA.

Court of Appeals of Utah.

Nov. 1, 2007.

Debra M. Nelson and John K. West, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeffrey S. Gray, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Andrew Brink appeals his conviction for one count of aggravated robbery. He argues that the trial court abused its discretion by refusing to admit expert testimony regarding eyewitness identification. We disagree and affirm the trial court's decision.

## BACKGROUND

¶ 2 On January 19, 2006, Brink was charged with one count of aggravated robbery. After the preliminary hearing, Brink gave notice that he intended to call an expert witness, Dr. David Dodd, to testify regarding eyewitness identification. Brink also filed a memorandum in support of the testimony, which incorporated a letter from Dr. Dodd regarding the case-specific information he had reviewed and his resulting analysis of the eyewitness identification problems specific to this case. The State responded with a motion in limine to exclude the testimony, arguing that in addition to the explanation of "general scientific principles," Dr. Dodd intended to evaluate specific eyewitness testimony in this case, which "would invade the province of the jury to assess credibility." The trial court held an evidentiary hearing on the matter, during which Dr. Dodd was questioned regarding the testimony he would offer at trial. After taking the matter under advisement, the trial court granted the State's motion to exclude Dr. Dodd's testimony, but invited Brink to submit a cautionary jury instruction addressing the potential problems with eyewitness identification generally, as well as those problems specific to this case.

¶ 3 Brink submitted an appropriate instruction, five pages in length, which was used as drafted without objection from the State or modification by the trial court. After the jury trial and the resulting conviction, Brink filed a motion to arrest judgment, which was denied. Brink was sentenced to an indeterminate prison term, and he now timely appeals the trial court's decision regarding the exclusion of Dr. Dodd's testimony.

## ISSUE AND STANDARD OF REVIEW

¶ 4 Brink argues that the trial court incorrectly excluded the testimony of Dr. Dodd in this case where eyewitness identification was the central issue. " 'The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard. Under this standard, we will not reverse [a decision to admit or exclude expert testimony] unless the decision exceeds the limits of reasonability.' " *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (alteration in original) (quoting *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993)).

## ANALYSIS

¶ 5 In *State v. Long*, 721 P.2d 483 (Utah 1986), the Utah Supreme Court, concerned with the "deep and generally unperceived flaws" inherent in eyewitness testimony and the "great weight" jurors often give such testimony, established a rule requiring trial courts to give a cautionary jury instruction on the subject "whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *Id.* at 492. The rule regarding expert testimony on the subject, however, is more flexible. The supreme court "ha[s] not adopted a per se rule of inadmissibility of expert testimony regarding eyewitness identification." *State v. Hubbard*, 2002 UT 45, ¶ 14, 48 P.3d 953. Instead, the court has ruled that "whether to allow proffered expert testimony regarding eyewitness identification testimony is a matter best left to the trial court's discretion because of the trial court's superior position to judge the advisability of allowing such testimony" in a particular case. *Id.*

¶ 6 The trial court here, after "[h]aving considered the arguments presented by counsel and the testimony of Dr. Dodd," and viewing *State v. Hubbard*, 2002 UT 45, 48 P.3d 953, as "particularly persuasive," determined that "Dr. Dodd's testimony would constitute a lecture to the jury and, therefore, the [c]ourt [chose] to educate the jury through the use of appropriate instructions instead of through expert testimony." *See id.* ¶ 17 ("[I]t is left to the trial court's sound discretion to decide whether the proffered expert testimony would constitute a lecture, the substance of which can be just as adequately conveyed to the jury through the judge in a jury instruction, as opposed to through expert testimony."). Brink argues that such a determination was an abuse of discretion.

[2] ¶ 7 Brink first argues that the trial court abused its discretion by not setting forth reasoning in support of the decision to exclude Dr. Dodd's testimony. It is clear, however, that the trial court did state its reasoning, i.e., that the proposed testimony would constitute a lecture to the jury, the information from which could be adequately conveyed to the jury through a cautionary instruction. Nonetheless, Brink argues that "[t]he trial court fail[ed] to do any independent analysis of the specific facts of this case in making its determination" and that such analysis "is necessary to show that the trial court properly exercised its discretion rather than blindly excluding expert testimony knowing that its decision would not be overturned." But the trial court clearly considered the specific facts and circumstances of this case. Along with the determination that the proposed testimony would constitute a lecture to the jury, the court also determined that it agreed with Brink that the generic instructions originally set forth in *Long* may not adequately address all the problems inherent in the eyewitness identification here and invited Brink "to submit instructions that [he] believe[s] are appropriate in light of the evidence presented regarding eyewitness identification." *See id.* ¶ 20 ("We continue to trust, however, that trial courts will be able to specifically tailor instructions other than those offered in *Long* that address the defi-

ciencies inherent in eyewitness identification."). Thus, the trial court did consider the specific facts of this case, determined that a generic instruction may not have been adequate, and invited Brink to submit an instruction tailored to the facts particular to the eyewitness identification offered in this case.

¶ 8 Nor do we agree with Brink's assessment that the trial court's decision "appears to rely on the *Hubbard* opinion as creating a per se rule allowing it to keep out expert testimony regarding eyewitness identification regardless of its content and simply give a jury instruction." The trial court indicated in its decision that the facts of this case make the admissibility question a close call, specifically noting that "it would not be an abuse of discretion to admit Dr. Dodd's testimony." Thus, the court did not interpret *Hubbard* as creating any sort of per se rule one way or the other.

■ ¶ 9 Brink also claims that the jury instruction here "could not adequately communicate to the jury all the concerns regarding the fallibility of the eyewitness identification specific to this case as could the expert's testimony when the jury was hearing the evidence and determining witness credibility." Although Brink makes the general claim that expert testimony should have been allowed here because Dr. Dodd would have "use[d] specific analogies between the facts of this case and the circumstances and settings of specific studies of which he had knowledge," Brink fails to expound on what such testimony would have provided that the

jury instruction could not have conveyed. Indeed, the one example Brink sets forth—regarding an eyewitness that became more and more certain that Brink was the perpetrator with each subsequent opportunity at identification, and regarding Dr. Dodd's proposed testimony of studies showing that this phenomena is common although such identification is not necessarily accurate—is squarely addressed in the jury instruction. The instruction cautioned that "a witness who had previously made an identification is likely to become more confident in making subsequent identifications and is likely to exaggerate the factors favorable to the witness's opportunity to observe the actor." [1] Although Brink claims that Dr. Dodd's testimony regarding the related studies was necessary, Brink fails to illustrate what exact testimony would have been presented, how that information could not have been presented in the jury instruction,[2] and how that information would have likely led to a different outcome.

> "[A] trial court's determination that expert testimony would amount to a lecture to the jury as to how they should judge the evidence, and its subsequent refusal to admit such testimony into evidence 'is not an abuse of discretion, particularly where there has been no showing that the excluded evidence would probably have had a substantial influence in bringing about a different verdict.' "

*Id.* (quoting *State v. Butterfield*, 2001 UT 59, ¶ 43, 27 P.3d 1133). Thus, we are not convinced that the exclusion of Dr. Dodd's testi-

---

1. The jury instruction given here closely tracks the language of the cautionary instruction given in *Hubbard*. However, the instruction here contains even more language of the type the supreme court pointed to as "good examples of the type of instructions that educate the jury by not only providing factors to be considered, but by also concisely explaining why they are commonly misunderstood factors of eyewitness identification," *State v. Hubbard*, 2002 UT 45, ¶ 20 n. 5, 48 P.3d 953. For example, the instruction here also instructed the jury to consider that (1) stress or fright likely impairs the observation capacity of a witness, (2) a witness identification of a person of a different race may be less reliable, (3) an officer who knows the suspect's identity may inadvertently cue that knowledge to the witness when showing a photo spread, (4) a witness is more likely to choose a photo when the photos are

presented in groups and not sequentially, and (5) an identification made from seeing a person is usually more reliable than an identification made from a photo. Each of these considerations flows from the specific facts and circumstances of this case.

2. To the extent that any additional information could have simply been included in the cautionary jury instruction, Brink, of course, may not now complain of its absence because he was the author of that instruction. *See State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct.App.1991) ("We conclude that where an instruction is submitted by a party, that same party cannot later object to it because he or she has already waived any objection and endorsed it as legally sound.").

mony "exceeds the limits of reasonability," *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (internal quotation marks omitted).

¶ 10 Brink further argues that the testimony should have been admitted because rule 702 of the Utah Rules of Evidence allows expert testimony that "assist[s] the trier of fact," Utah R. Evid. 702. He asserts that expert testimony is not only helpful in situations such as this, but is "essential to a defendant's ability to present a defense." The issue of admissibility of expert testimony under rule 702 was also argued before the trial court in *Hubbard*. *See* 2002 UT 45, ¶ 9, 48 P.3d 953. Although the supreme court did not directly address rule 702 in its analysis, the court affirmed the trial court's decision to exclude expert testimony in a case where eyewitness identification was " '[o]ne of the most important questions in [the] case,' " *id.* ¶ 11 n. 3, notwithstanding that the court clearly believed that the expert testimony would be helpful to the jury, *see id.* ¶ 15 ("[I]f a proposed expert witness is not permitted to testify about the limitations inherent in eyewitness identifications, the jury might not be educated about the potential deficiencies of eyewitness identification, and it will fall upon the court to instruct the jury on the limitations and problems that research has discovered."). Thus, we cannot say that the trial court abused its discretion by excluding the expert testimony simply because the testimony would have met the helpfulness requirement of rule 702.[3]

## CONCLUSION

¶ 11 The trial court did not abuse its discretion in excluding Dr. Dodd's testimony. The court gave reasoning to support its decision, understood the rule set forth in *Hub-*

---

**3.** Even when expert testimony meets the requirements of rule 702, it may still be excluded under rule 403 when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. The supreme court has expressed its concern that expert testimony regarding eyewitness identification can, in essence, take away the credibility determination from the jury. *See Hubbard*, 2002 UT 45, ¶ 15, 48 P.3d 953 ("If the expert witness is permitted to testify, he or she will evaluate for the jury,

*bard,* and provided the jury with the cautionary instruction supplied by Brink, which was tailored to the facts of the case. Further, Brink has not made a substantial showing that Dr. Dodd's testimony "would probably have had a substantial influence in bringing about a different verdict." *State v. Hubbard,* 2002 UT 45, ¶ 15, 48 P.3d 953 (internal quotation marks omitted). And the simple fact that the testimony may have been helpful to the jury under rule 702 does not require admission of the testimony. We therefore affirm.

¶ 12 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.

either directly or indirectly, to what extent the percipient witness testimony should be believed. Permitting an expert witness, either directly or indirectly, to analyze the credibility of a percipient witness for the jury and thereby opine regarding whether eyewitness testimony is reliable or not, to a certain extent, steps into the province of the jury...."). And certainly evidence that would be a mere lecture to the jury, the substance of which could be adequately conveyed in a jury instruction, implicates the considerations of delay, waste of time, and needless presentation of evidence mentioned in rule 403.